IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JADE THOMPSON,<br><br>    Plaintiff,<br><br>    v.<br><br>MARIETTA EDUCATION ASSOCIATION, MARIETTA BOARD OF EDUCATION,<br><br>    Defendants. | Case No.: 2:18-cv-00628<br><br>Judge: |

## COMPLAINT

Jade Thompson, for her Complaint against the Marietta Education Association and the Marietta Board of Education (collectively, "Defendants"), alleges as follows:

### NATURE OF THE ACTION

1. This action challenges the Defendants' unlawful scheme of withholding money from the paychecks of public employees to fund the speech and petitioning of a labor union without their affirmative consent.

2. The First Amendment protects the individual rights of free speech and association, including the rights *not* to speak and *not* to associate. Accordingly, public employees who do not belong to a labor union "should not be required to fund a union's political and ideological projects unless they choose to do so." *Knox v. Serv. Employees Int'l Union, Local 1000*, 567 U.S. 298, 315 (2012). Furthermore, "[b]ecause a public-sector union takes many positions during collective bargaining that have powerful political and civic consequences, the compulsory fees constitute a form of compelled speech and association that imposes a significant impingement on First Amendment rights." *Id.* at 311–12

(quotations and citations omitted). As the Supreme Court has now made clear in *Janus v. American Federation of State, County, and Municipal Employees, Council 31*, No. 16-1466, Slip Op. (June 2018), that burden is impermissible.

3. In violation of these principles, Ohio law authorizes local governments and labor unions to require public employees who are not union members to fund union activities. And it authorizes them to deduct fees to fund those activities from public employees' paychecks, absent those employees' affirmative consent.

4. That arrangement is unlawful for at least three independent reasons.

5. First, union activities "germane" to collective bargaining are expressive and associational activities that public employees have a First Amendment right not to subsidize. *Janus v. American Federation of State, County, and Municipal Employees, Council 31*, No. 16-1466, Slip Op. 7–18 (June 2018). Thus, a union has no right to the money of any public employee who does not consent to funding it. The government may not require its employees to subsidize a labor union's speech and petitioning of government.

6. Second, the First Amendment requires that the government obtain the affirmative consent of a person before directing her money to subsidize a private organization's speech, petitioning of government, and other political and ideological activities. But, as *Janus* now holds, a waiver of First Amendment rights "cannot be presumed"; rather, agency fees cannot be collected from non-union members "[u]nless employees clearly and affirmatively consent." *Janus*, Slip Op. at 48. Just like any other organization—a church, a charity, an activist group—a labor union has no inherent right to any individual's money, and the government therefore may not simply deduct union fees of any kind from a public employee's paycheck absent that employee's affirmative consent.

Requiring public employees to periodically navigate an arduous "opt-out" scheme to avoid subsidizing speech with which they disagree—and taking their money if they are unable to navigate that regime perfectly every time—is not sufficiently tailored to protect their First Amendment rights.

7. Third, "[d]esignating a union as the employees' exclusive representative substantially restricts the rights of individual employees. Among other things, this designation means that individual employees may not be represented by any agent other than the designated union; nor may individual employees negotiate directly with their employer." *Janus*, Slip Op. 2. For that reason, and because the union's advocacy is attributed to employees, that designation violates employees' speech and petitioning rights, as well as their associational rights, in contravention of the First Amendment.

8. For these reasons, the agency-fee, "opt-out," and exclusive representation schemes employed by Ohio public employers and unions are unconstitutional. The Plaintiff is entitled to a declaration to that effect and to an injunction prohibiting the Defendants from continuing to burden the Plaintiff's First Amendment rights through operation of their unconstitutional fee-deduction scheme.

## PARTIES

9. The Plaintiff, Jade Thompson, is a Spanish teacher at Marietta High School in Washington County, Ohio.

10. Defendant Marietta Board of Education (the "Board") manages and controls schools in the Marietta School District, including Marietta High School. Ohio Rev. Code § 3313.47. The Board is an Ohio political subdivision, *see* Ohio Rev. Code § 2743.01(B), and a corporate body capable of being sued, Ohio Rev. Code § 3313.17. The Board employs

teachers in Marietta public schools, including Ms. Thompson. Ohio Rev. Code § 3319.07(A).

11. Defendant Marietta Education Association (the "Union") is an "employee organization" as defined in the Ohio public-employees labor-relations code, Ohio Rev. Code § 4117.01(D), and represents employees of the Marietta School District. The Union is affiliated with the Ohio Education Association, an Ohio teachers union, and the National Education Association, a national teachers union.

## JURISDICTION AND VENUE

12. This case raises claims under the First and Fourteenth Amendments of the federal Constitution and 42 U.S.C. § 1983. Jurisdiction is proper under 28 U.S.C. § 1331.

13. Ms. Thompson, the Marietta Board of Education, and the Marietta Education Association are all residents of Washington County, Ohio. Venue is proper in this District under 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

**A.   Ohio Law Permits Governmental Entities To Exact "Agency Fees" from Public Employees to Fund Union Speech Without Employees' Affirmative Consent**

14. Under Ohio law, a union may become the exclusive bargaining represented for public employees in a bargaining unit, such as a public school district, by submitting proof that a majority of the bargaining-unit employees wish to be represented exclusively by the union. Ohio Rev. Code § 4117.05; *see also* Ohio Rev. Code § 4117.04 (providing that public employers shall recognize and bargain with a designated "exclusive representative).

15. A public employer must bargain collectively with that union. Ohio Rev. Code Ann. § 4117.04(B).

16. Ohio law sets a broad scope to negotiations, including "[a]ll matters pertaining to wages, hours, or terms and other conditions of employment" as well as over "the continuation, modification, or deletion of any existing provision of a collective bargaining agreement." Ohio Rev. Code § 4117.08(A).

17. Permissive subjects of bargaining include: "matters of inherent managerial policy," such as "the functions and programs of the public employer"; "standards of services"; the employer's "overall budget"; its "organizational structure"; hiring, discipline, and supervision of employees; methods "by which governmental operations are to be conducted"; and other matters related to "the mission of the public employer as a governmental unit." Ohio Rev. Code § 4117.08(C).

18. An agreement between a public employer and union on any of these topics must be reduced to writing and executed.

19. Ohio law permits such an agreement to contain a provision requiring the public employer to collect a "fair share" fee from employees. Ohio Rev. Code § 4117.09(C). Although the statute does not empower public employers to require union membership as a condition of employment, it does empower them to deduct fees in the same amount as union dues from non-member employees' paychecks and remit those to the relevant unions. *Id.*

20. The fee is deducted from non-members' paychecks automatically "and does not require the written authorization of the employee." Ohio Rev. Code § 4117.09(C).

21. Ohio law requires that, if a collective-bargaining agreement provides for a fair-share arrangement, the union establish an internal procedure for issuing rebates to

5

employees who are entitled to withhold all or a portion of the fair-share agreement. Ohio Rev. Code § 4117.09(C).

22. A rebate is only required for "expenditures in support of partisan politics or ideological causes not germaine [sic] to the work of employee organizations in the realm of collective bargaining." Ohio Rev. Code § 4117.09(C). The Ohio Administrative Code confirms the limited scope of fees subject to rebate. Ohio Admin. Code § 4117-11-01(A) ("The internal rebate procedure shall provide for a rebate of expenditures in support of partisan politics or ideological causes not germane to the work of employee organizations in the realm of collective bargaining. Any employee who has paid to the employee organization a fair share fee may apply to the employee organization for a rebate for such expenditures.")

23. By statute, a rebate may be conditioned on the employee's making "a timely demand on the employee organization." Ohio Rev. Code § 4117.09(C).

24. By statute, the union may determine whether the employee is entitled to a rebate, and that determination is subject to review only for "arbitrary and capricious action" in an appeal before the Ohio Employment Relations Board. Ohio Rev. Code § 4117.09(C).

25. An appeal must be filed within 30 days of the determination, and the appeal must specify "the arbitrary or capricious nature of the determination." Ohio Rev. Code § 4117.09(C). A petition must identify the amount of the employee's fair share fee, include a copy of the rebate determination, state the reasons "why the rebate determination was arbitrary and capricious," and contain proof of service on the union. Ohio Admin. Code § 4117-11.01(B). The union may respond to the petition, and it may be subject to a hearing by the Employment Relations Board. Ohio Admin. Code § 4117-11.01(C).

### B. The Board Agrees To Exact Agency Fees from Its Employees' Paychecks To Fund the Union's Speech Without Employees' Affirmative Consent

26. The Board and the Union are parties to a collective bargaining agreement with a term from June 30, 2016, through June 29, 2018. *See* Exhibit A (the "Agreement").

27. The Agreement establishes a bargaining unit of "all full and regular part-time certificated personnel employed under contract, including classroom teachers, special education teachers, psychologists, guidance counselors, librarians, school nurses, head teacher(s), attendance officer, resource teachers, and full-time substitutes employed sixty-one (61) or more consecutive days in the same position in a school year." Agreement § 1.01.

28. The Agreement recognizes the Union as the "sole and exclusive bargaining agent for the members of the bargaining unit." Agreement § 1.01.

29. The Agreement records the Board's and Union's negotiated points of agreement, including those pertaining to wages, benefits, grievances, teacher planning time, professional meetings, the school day, the school year, student discipline, school activities, class size, transfer, leaves of absence, vacancies, teacher lounges, performance appraisals, and so forth.

30. The Agreement also includes an Article titled "Association Rights."

31. Among its provisions is one requiring that "[a]ll bargaining unit members who are not members of the Association shall pay a monthly agency fee equivalent to the monthly dues uniformly required of such members." Agreement § 27.018.

32. It provides that the agency fee amount "be automatically deducted commencing the first paycheck on or after January 15th of each year and continue to be deducted throughout the remaining paychecks."

33. It also provides that the payment "shall be subject to a rebate procedure provided by the Association meeting all requirements of applicable state and federal law." Agreement § 27.018.

34. Pursuant to this provision, the Union has adopted an opt-out procedure.

35. Under that procedure, the agency fee amount is deducted from the paychecks of bargaining unit members to fund the Union's activities without their affirmative consent.

36. That procedure presumes that the Board's non-union employees wish to have an agency fee equivalent in amount to union dues deducted each month from their paychecks and that such employees wish to fund the Union's political activities to the same extent as a Union member. An employee who does not indicate otherwise through the opt-out procedure will have that amount automatically deducted each month, and a portion of that fee will be used to fund the Union's political activities.

37. Employees who oppose funding the Union's political activities must follow the opt-out procedure to avoid doing so each year. Among other things, the employee must send the opt-out notice via mail or deliver it in person to a Union representative.

38. The employee may only opt out between specific dates in mid-December and mid-January of each year (typically December 15 through January 15).

39. To qualify, the employee's objection must be received or post-marked by the January deadline.

40. If the employee does not comply with the procedure to register an objection, the employee's rights are waived, and the Union proceed to collect the full agency fee for the entire year.

41. If the employee does successfully register an objection, the Union affords a fee reduction for that single year.

42. To assess whether the Union's calculation of the fee reduction is correct, the employee must examine a notice the Union provides, called a *Hudson* notice, outlining the Union's political spending.

43. Disputes over the calculation are submitted to arbitration.

44. If the employee wishes to challenge the arbitration decision, the employee must file a petition with the Ohio Employment Relations Board within 30 days of the determination. As described above, the determination is subject to an arbitrary-and-capricious standard of review.

45. The Agreement does not permit an employee to opt-out from paying the remainder of the agency fee that is (according to the Union's calculation) "germane" to collective bargaining and not attributable to partisan politics or ideological causes.

46. Even if the Agreement did permit an employee to opt-out from paying agency fees altogether, such a scheme would presume that employees wish to have an agency fee deducted each month from their paychecks to fund the Union's activities, including collective bargaining.

C. **The Board Infringes Ms. Thompson's First Amendment Rights by Withholding Funds from Her Paycheck To Fund the Union's Speech Without Her Affirmative Consent**

47. The Union transfers percentages of dues and of agency fee payments to its affiliates, the National Education Association and the Ohio Education Association.

48. The Union and its affiliates advocate on a wide range of issues.

9

49. The National Education Association, for example, has published a 150-page handbook of its currently in-force resolutions. These include resolutions on matters ranging from education policy, school financing, charter schools, and early childhood learning to "social and economic justice," the constitutional convention process of Article V, voting rights, historic preservation, covert operations and counterintelligence activities, and the "self-determination of indigenous people," racial preferences, sex education, the metric system, D.C. statehood, U.S. participation in the International Court of Justice and criminal court, and gun control.

50. The National Education Association generally adopts such measures at its annual "Representative Assembly." The National Education Association treats its Representative Assembly as fully chargeable to non-members. It therefore funds these advocacy efforts, in part, through agency fees collected from non-members.

51. The Ohio Education Association also advocates on political issues and has adopted a handbook of legislative policies on a swath of issues, including legislative redistricting, voter identification laws, minimum wage, asbestos, nuclear waste storage and dumping, public-employee retirement.

52. The Ohio Education Association adopted these and other measures at its representative assembly, which it treats as fully chargeable to non-members. It therefore funds these advocacy efforts, in part, through agency fees collected from non-members.

53. Both the National Education Association and Ohio Education Association encourage members to engage in political advocacy and providing training for that purpose.

54. The Ohio Education Association and National Education Association obtain funding for their activities through the dues of members of affiliated local unions, such as

the Marietta Education Association, and through agency-fee payments made to such local unions.

55. Both the National Education Association and Ohio Education Association undertake political and ideological activities that they do not regard as "germane" to collective bargaining. These political and ideological activities are funded through dues of members of affiliated local unions, such as the Marietta Education Association, and through agency-fee payments made to such local unions.

56. The Union's collective bargaining activities and other activities that it regarded as "germane" to collective bargaining are funded through dues of members and through agency-fee payments by non-members.

57. Ms. Thompson is a member of the bargaining unit identified in Article 1.01 of the Agreement.

58. Ms. Thompson is not a member of the Union.

59. Ms. Thompson disagrees with the Union's stance on many issues, including issues on which the Union and its representatives have taken positions in the course of collective bargaining.

60. These disagreements came to a head in 2010, when Ms. Thompson's husband, Andy Thompson, ran for the Ohio House of Representatives.

61. The Ohio Education Association launched an attack campaign against Mr. Thompson, through mailers and radio and television advertisements.

62. The president of the Marietta Education Association emailed every teacher at Marietta High School, urging them to vote and advocate against Mr. Thompson.

63. Ms. Thompson's agency fees fund the activities of the Union, the National Education Association, and the Ohio Education Association.

64. To avoid funding union the political and ideological activities that unions have identified as not being "germane" to collective bargaining, Ms. Thompson must take steps every year to opt out of the portion of the agency fee that Ohio law and the Agreement allow her not to pay.

65. These steps take time.

66. These steps cost money.

67. Ms. Thompson must prepare a written notice to the Union.

68. She must research what to say in the notice.

69. She must research how to send the notice.

70. She must research where and when to send the notice.

71. She must prepare the mailing.

72. She must pay the postage.

73. She must travel to a post office to send the notice via certified mail.

74. On receiving the Union's response, she must independently verify the amount the Union calculates as being reimbursable. This requires examination of a detailed *Hudson* notice.

75. Assessing her rights, including under changes in the legal regime, may require consultation with an attorney or accountant, and failure to undertake such consultation may prevent her from identifying and remediating any infringement of her rights.

76. If Ms. Thompson fails to undertake any step of this process for any reason or fails to navigate the process accurately, the Union collects the full agency fee and uses it to subsidize political and ideological causes she opposes.

77. Even if she successfully completes this opt-out procedure, Ms. Thompson is still compelled to subsidize activities the Union and its affiliates have identified as "germane" to collective bargaining, despite the fact that she opposes positions that the Union takes in collective bargaining and other activities and speech that the Union and its affiliates regard as "germane" to collective bargaining.

78. She must navigate this opt-out procedure anew each year.

79. Ms. Thompson has in previous years opted out of paying non-chargeable fees.

80. Ms. Thompson opted out of paying non-chargeable fees in January 2018

81. Ms. Thompson has, nevertheless, been required to pay chargeable fees.

**D.   Ohio's Opt-Out Scheme Violates the First Amendment**

82. Agency-shop arrangements, such as Ohio's fair-share law, impose a "significant impingement on First Amendment rights" because "[t]he dissenting employee is forced to support financially an organization with whose principles and demands he may disagree." *Ellis v. Bhd. of Ry., Airline & S.S. Clerks*, 466 U.S. 435, 455 (1984)). This "impingement" is quite severe because "public-sector union[s] take[] many positions during collective bargaining that have powerful political and civic consequences." *Knox*, 132 S. Ct. at 2289.

83. Moreover, "any procedure for exacting [union] fees from unwilling contributors must be carefully tailored to minimize the infringement of free speech rights." *Id.* at 2291 (citation omitted). By contrast, "unions have no constitutional entitlement to the

fees of nonmember-employees." *Id.* (citation omitted). Rather, their "collection of fees from nonmembers is authorized by an act of legislative grace." *Id.* (citation omitted).

84. The Agreement's agency-fee provision and the provisions of Ohio law that enable it are unconstitutional for two independent reasons.

85. First, Ohio law permits Ohio governmental entities to require employees who are not members of a union to fund activities identified by the union as "germane" to collective bargaining, including speech on matters of public concerning and petitioning of government on matters of public concern.

86. As the Supreme Court held in its recent decision in *Janus v. American Federation of State, County, and Municipal Employees, Council 31*, No. 16-1466, Slip Op. (June 2018), this is unconstitutional.

87. Second, Ohio law's opt-out procedure is unconstitutional.

88. Requiring public employees to affirmatively opt out to obtain a rebate is an unacceptable burden on speech.

89. No compelling government interest supports requiring public employees to affirmatively opt out.

90. As the Supreme Court held in its recent decision in *Janus v. American Federation of State, County, and Municipal Employees, Council 31*, No. 16-1466, Slip Op. (June 2018), it is unconstitutional to collect agency fees from employees who do not "affirmatively consent" as shown "by clear and compelling evidence." *Janus*, Slip Op. at 48 (quotations omitted).

91. Even if there were a compelling government interest, requiring public employees to affirmatively opt out to obtain a rebate is not narrowly tailored.

92. The process to affirmatively opt out is arduous.

93. A public employee must attempt to opt out every year.

94. If a union denies the rebate, the employee must then prosecute an arduous administrative appeal with an unfavorable standard of review.

95. There is a more narrowly tailored alternative to all of these onerous procedures: requiring that, before the government withholds funds from a public employee's paycheck to fund a labor union's activities, the employee affirmative consent to the withholding. This would remove the burden from those individuals electing not to fund union speech and allow those individuals interested in supporting such speech to do so.

**COUNT I**
**Exacting Compulsory Fees to Support**
**Collective Bargaining Violates the First Amendment**

96. The Plaintiff incorporates and re-alleges each and every allegation in the foregoing paragraphs as though fully set forth herein.

97. The First Amendment to the United States Constitution provides: "Congress shall make no law . . . abridging the freedom of speech."

98. The Fourteenth Amendment to the United States Constitution incorporates the protection of the First Amendment against the States, providing: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

99. By requiring the Plaintiff to make any financial contributions in support of any union, Ohio's fair-share arrangement violates the Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution.

100. The Plaintiff has no adequate remedy at law.

101. The controversy between Defendants and the Plaintiff is a definite and concrete dispute concerning the legal relations of parties with adverse legal interests.

102. The dispute is real and substantial, as the Union is continuing to collect fees each month from the Plaintiff's paycheck.

103. The declaratory relief sought is not based on a hypothetical state of facts, nor would it amount to a mere advisory opinion, as the parties dispute the legality of ongoing seizure of a portion of the Plaintiff's paycheck.

104. As a result of the foregoing, an actual and justiciable controversy exists between the Plaintiff and the Union regarding their respective legal rights, and the matter is ripe for review.

### COUNT II
### Requiring an Individual To Opt Out from Exactions To Subsidize a Labor Union's Speech and Petitioning Violates the First Amendment

105. The Plaintiff incorporates and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint, as though fully set forth herein.

106. By requiring the Plaintiff to opt-out from funding union speech and petitioning activities with which she disagrees, Ohio's agency-fee arrangement violates the Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution.

107. The Supreme Court has now made clear: "Neither an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay." *Janus*, Slip Op. at 48.

108. The Plaintiff has no adequate remedy at law.

109. The controversy between Defendants and the Plaintiff is a definite and concrete dispute concerning the legal relations of parties with adverse legal interests.

110. The dispute is real and substantial, as the Union is continuing to collect fees each month from the Plaintiff's paycheck and will continue to do so in coming months and years.

111. The declaratory relief sought is not based on a hypothetical state of facts, nor would it amount to a mere advisory opinion, as the parties dispute the legality of ongoing seizure of a portion of the Plaintiff's paycheck.

112. As a result of the foregoing, an actual and justiciable controversy exists between the Plaintiff and the Union regarding their respective legal rights, and the matter is ripe for review.

### COUNT III
### Designating a Union as Employees' "Exclusive Representative" Violates the First Amendment

113. The Plaintiff incorporates and re-alleges each and every allegation contained in the foregoing paragraphs of this Complaint, as though fully set forth herein.

114. By designating the Union as the Plaintiff's exclusive representative, Ohio law and the Agreement violate the Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution.

115. That designation compels the Plaintiff to associate with the Union.

116. That designation attributes the Union's speech and petitioning to the Plaintiff.

117. That designation restricts the Plaintiff's speech and petitioning.

118. The Plaintiff has no adequate remedy at law.

119. The controversy between Defendants and the Plaintiff is a definite and concrete dispute concerning the legal relations of parties with adverse legal interests.

120. The dispute is real and substantial, as the Union continues to hold itself out as the Plaintiff's exclusive representative and its designation as such restricts the Plaintiff's rights.

121. The declaratory relief sought is not based on a hypothetical state of facts, nor would it amount to a mere advisory opinion, as the parties dispute the legality of the Union's designation as the Plaintiff's exclusive representative.

122. As a result of the foregoing, an actual and justiciable controversy exists between the Plaintiff and the Union regarding their respective legal rights, and the matter is ripe for review.

## COSTS AND ATTORNEY FEES

123. Pursuant to 42 U.S.C § 1988, the Plaintiff seeks an award of costs and attorney fees incurred in the litigation of this case.

## PRAYER FOR RELIEF

For these reasons, Ms. Thompson requests that the Court:

(A) Enter a judgment declaring that Ohio's fair-share law, codified in Ohio Rev. Code § 4117.09(C) and Ohio Admin. Code § 4117-11-01(A), and the Agreement impermissibly abridge Ms. Thompson's First Amendment free-

speech rights by requiring payment of fees to a union as a condition of public employment;

(B) Enter a judgment declaring that Ohio's fair-share law, codified in Ohio Rev. Code § 4117.09(C) and Ohio Admin. Code § 4117-11-01(A), and the Agreement impermissibly abridge Ms. Thompson's First Amendment free-speech rights by requiring Ms. Thompson to opt out of the fair-share process to seek reimbursement of fees through a rebate scheme.

(C) Enter a judgment declaring that Ohio's exclusive-representation law, codified in Ohio Rev. Code § 4117.04–05, and the Agreement impermissibly abridge Ms. Thompson's First Amendment speech, petitioning, and associational rights by designating the Union as Ms. Thompson's exclusive representative;

(D) Enter an injunction barring Defendants from seeking to require payment of agency fees from any employee who has not affirmatively consented to financially support the Union;

(E) Enter an injunction barring Defendants from recognizing the Union as Ms. Thompson's exclusive representative or representative;

(F) An award of costs, including reasonable attorney fees, pursuant to 28 U.S.C. § 1988(b); and

(G) Grant to Ms. Thompson such additional or different relief as the Court deems just and proper.

Respectfully submitted,

/s/Patrick T. Lewis

| | |
|---|---|
| Robert D. Alt (0091753)** | Patrick T. Lewis (0078314) |
| Daniel J. Dew (0089502)** | *Trial Attorney* |
| THE BUCKEYE INSTITUTE | Email: plewis@bakerlaw.com |
| 88 East Broad Street, Suite 1120 | BAKER & HOSTETLER LLP |
| Columbus, OH 43215 | Key Tower |
| (614) 224-4422 | 127 Public Square, Suite 2000 |
| Email: robert@buckeyeinstitute.org | Cleveland, OH 44114 |
| | (216) 621-0200 / Fax (216) 696-0740 |

Andrew M. Grossman*
Mark W. DeLaquil*
Richard B. Raile*
Email: agrossman@bakerlaw.com
Email: mdelaquil@bakerlaw.com
Email: rraile@bakerlaw.com
BAKER & HOSTETLER LLP
1050 Connecticut Ave., N.W.
Washington, DC 20036
(202) 861-1697 / Fax (202) 861-1783

*Counsel for Plaintiff, Jade Thompson*

* Pro hac vice motions forthcoming
** Applications for admission forthcoming

111627.000002 4849-9590-2316