UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Jade Thompson,

    Plaintiff,

    v.

Marietta Education Association, *et al.*,

    Defendants.

Case No. 2:18-cv-628

Judge Michael H. Watson

Magistrate Judge Vascura

## OPINION AND ORDER

Jade Thompson ("Plaintiff") sues the Marietta Education Association ("the Union") and Marietta Board of Education ("the Board") (collectively, "Defendants") under 42 U.S.C. § 1983. She argues that Ohio Revised Code §§ 4117.04–05 are unconstitutional. The Court denied Plaintiff's motion for a preliminary injunction, Op. and Order, ECF No. 52, and Plaintiff, the Union, and the Board now all move for summary judgment. ECF Nos. 56, 57, 58. For the following reasons, the Court **GRANTS** the Union's and the Board's motions and **DENIES** Plaintiff's motion.

### I. FACTS

The pertinent facts of this case were recited in the Court's prior Opinion and Order, ECF No. 52. The Court adds, however, the following relevant facts.

The Collective Bargaining Agreement ("Agreement") that was in effect at the time this lawsuit was filed has been replaced by a successor Collective Bargaining Agreement ("Successor Agreement"). Both the Agreement and the

Successor Agreement are governed by the challenged portions of Ohio law. Stipulated Facts ¶ 12, ECF No. 59. No party suggests the Successor Agreement varies from the Agreement in any way material to this lawsuit. *See id.* ¶ 14.

Although Plaintiff at times asserts that the Board appoints or appointed the Union as Plaintiff's speaker, agent, or representative, *see, e.g.*, Pl. Mot. Summ. J. 2, ECF No. 58-1, that is not accurate. Rather, once an entity has been designated an exclusive representative, pursuant to Ohio Revised Code § 4117.05, Ohio law requires public employers like the Board to "extend to [that] exclusive representative . . . the right to represent exclusively the employees in the appropriate bargaining unit . . . ." O.R.C. § 4117.04(A). Thus, "[p]ursuant to the provisions of the Act governing the designation of employee representatives, the Board has *recognized* the Union as the majority-designated exclusive representative of a bargaining unit of certain public employees of the Board for the purposes of collective bargaining under the Act," Stipulated Facts ¶ 9, ECF No. 59 (emphasis added), it did not *appoint* the Union as the exclusive representative.

Additionally, Plaintiff's contention that the Union speaks for her is inaccurate. As a matter of law, Ohio requires the Board to recognize the Union as the bargaining unit's representative for purposes of collective bargaining. O.R.C. § 4117.04(A), (B). The Agreement also states that the Board recognized the Union as the bargaining agent for the members of the bargaining unit. CBA § 1.01, ECF No. 1-1. Thus, the Court concluded in its prior Opinion and Order

that "although the Union represents Plaintiff, and in that representation 'speaks for her,' realistically, it is speaking for the bargaining unit members as a collective rather than purporting to espouse specific views for any individual bargaining unit member." Op. and Order 19, ECF No. 52; *cf. Reisman v. Associated Faculties of Univ. of Maine*, 939 F.3d 409, 412–13 (1st Cir. 2019) (concluding same when interpreting similar statute). Plaintiff's argument that Ohio law or the Agreement should be interpreted as meaning that the Union's speech is attributable to each individual bargaining unit member (as opposed to the bargaining unit as a collective), or that they should be interpreted as appointing the Union as Plaintiff's personal agent or representative (as opposed to the bargaining unit's agent or representative), is unpersuasive and does not change the Court's prior legal conclusion. And, as a factual matter, Plaintiff has not offered evidence that anyone perceives the Union's speech as attributable to her as an individual. On the other hand, since the Court issued its Opinion and Order denying Plaintiff's motion for a preliminary injunction, the Board has submitted additional evidence showing that the Superintendent of the Marietta City School District "make[s] no assumption or conclusion that the Union speaks on behalf of all teachers, or that all teachers agree with the position(s) of the Union." Hampton Decl. ¶ 11, ECF No. 56-1.

Because the parties dispute only the law or legal significance of certain facts, and there is no genuine dispute of any material fact,[1] this case is prime for resolution via summary judgment.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,'

---

[1] The Court's legal conclusion that Plaintiff's claims are precluded by *Knight* renders it unnecessary to resolve the parties' disputes over the accuracy of certain assertions contained in Plaintiff's statement of facts. By way of example and not limitation, the parties dispute the accuracy of Plaintiff's statement that the Union "is entitled to participate in the adjustment process" during the adjustment of a grievance or Plaintiff's explanation of the Union's role in teacher evaluation procedures. *See* Pl. Mot. Summ. J. 3–4 (fact section), ECF No. 58-1; Bd. Resp. 5–7, ECF No. 63; Union Resp. 1–2, ECF No. 64. In any event, they are not material facts.

that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (stating that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making credibility determinations or weighing evidence). Furthermore, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251; *see Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Matsushita*, 475 U.S. at 587–88 (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment).

Here, the parties have filed cross-motions for summary judgment. Each party, as a movant for summary judgment, bears the burden of establishing that no genuine issue of material fact exists and that he or she is entitled to a judgment as a matter of law. The fact that one party fails to satisfy that burden on his or her own Rule 56 motion does not automatically indicate that the opposing party or parties has satisfied the burden and should be granted summary judgment on the other motion. In reviewing cross-motions for summary judgment, courts should "evaluate each motion on its own merits and view all

facts and inferences in the light most favorable to the non-moving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994). "The filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as if it was submitted for final resolution on a stipulated record." *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) (quoting *John v. State of La. (Bd. of Trs. for State Colls. & Univs.)*, 757 F.2d 698, 705 (5th Cir. 1985)). The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by one party to the litigation. *Taft Broad.*, 929 F.2d at 248.

### III.  ANALYSIS

The Court denied Plaintiff's request for a preliminary injunction primarily because it found that she was unlikely to succeed on the merits of her claim. Op. and Order 6–21, ECF No. 52. Specifically, the Court concluded that Plaintiff's claims were likely foreclosed by the Supreme Court's opinion in *Minnesota Bd. for Community Colleges v. Knight*, 465 U.S. 271, 283 (1984).

Upon thorough review of the summary judgment briefing, the Court concludes that the parties have not presented any factual issue in need of resolution. Further, nothing in the briefing undermines the Court's prior legal conclusion that Plaintiff's compelled speech and compelled association claims were likely foreclosed by the Supreme Court's decision in *Knight*. Accordingly, the Court affirms the analysis contained in its prior Opinion and Order, ECF No.

52, and now conclusively finds that Plaintiff's claims are precluded by Supreme Court precedent. There is no utility in repeating the Court's entire analysis here and, instead, the Court adopts that analysis herein. Notwithstanding that, the Court offers the following additional observations.

### A. Plaintiff Waived her Argument that Ohio Law Restricts her Right to Speak, Associate, and Petition the Government (Compl. ¶ 116, ECF No. 1).

In her motion for summary judgment, Plaintiff argues that Ohio's "exclusive-representation scheme burdens the First Amendment rights of the Plaintiff, Jade Thompson, and other non-members by binding the Board indefinitely to negotiate with the Union to the exclusion of non-members." Pl. Mot. Summ. J. 2, ECF No. 58-1; *see also id.* at 13–17. Plaintiff states that this argument "was not presented at the preliminary injunction stage, [but] it is pleaded in her Complaint and remains part of this case." Pl. Mot. Summ. J. 12, ECF No. 58-1 (record citations omitted).

But Plaintiff did not merely fail to address this argument at the preliminary injunction stage or fail to support it with sufficient evidence to warrant the grant of a preliminary injunction.[2] Rather, the Court found that Plaintiff affirmatively

---

[2] Thus, Plaintiff's affirmative waiver of the argument and express advocacy for relief that is entirely inconsistent with the argument she attempts to raise now renders the cases Plaintiff cites inapposite. *See United States v. Certain Land Situated in City of Detroit*, 76 F.3d 380, 380 n.1 (6th Cir. Jan. 23, 1996) ("Failure to present . . . evidence in support of . . . request for a preliminary injunction does not amount to a waiver of . . . argument at a later stage in the litigation."); *William G. Wilcox, D.O., P.C. Emp. Defined Ben. Pension Trust v. United States*, 888 F.2d 1111 (6th Cir. 1989) (finding district court erred in granting summary judgment based solely on its conclusion that its earlier denial of motion for preliminary injunction constituted the law of the case vis-à-vis the merits of

waived her argument that Ohio Revised Code § 4117.04(A) violates her right to speak, associate, and petition the government. Op. and Order 5, ECF No. 52; *id.* at n.8. Indeed, the instances of waiver are numerous:

- Mot. Prelim. In. 8, ECF No. 15-1 (conceding that "the government has no obligation to listen to the views of any such person or organization." (citing *Knight*, 465 U.S. at 283));

- *Id.* at 11 (representing that Plaintiff's "claim is not that she or an organization with which she chooses to associate has a right to participate in a bargaining session, but that she cannot be compelled to associate with the Union through its advocacy as her representative or agent.");

- Reply to Mot. Prelim. Inj. 1–2, ECF No. 35 ("*Knight* . . . rejected a claim to the right by non-union members to be heard by the government, which is not the right this motion seeks to vindicate.");

- *Id.* at 2 (stating the Union "treats this motion as a request to end collective bargaining or open it up to multiple competing unions, but that is not what [Plaintiff] seeks. She *simply requests* that the Union stop speaking on her behalf as her 'representative.' The Union may continue speaking, and it may continue negotiating terms and conditions of employment and other policy concessions with the board. Likewise, the Board may continue to negotiate with the Union the terms and conditions of employment that it offers to its employees and continue to apply the terms of its collective-bargaining agreement to all bargaining-unit members." (emphasis added));

---

the lawsuit); *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535 (6th Cir. 2007) (finding district court erred in concluding plaintiff was unlikely to succeed on the merits of its claim and should have granted a preliminary injunction based on the evidence presented). Although she referred only to her "motion" in several of the quoted examples above, when read in the proper context, it is clear that Plaintiff was arguing that (notwithstanding her Complaint) her position of this *case* was one in which she did not challenge exclusive representation and limited her challenge solely to the designation of that exclusive representative as her "representative" who spoke "for her."

- *Id.* at 11 ("She does not request to be heard or, for that matter, for the Union *not* to be heard.");

- *Id.* at 12 ("[G]ranting the relief here will . . . *not* prevent the Union from continuing to bargain with the Board or require the Board to bargain with [Plaintiff].");

- *Id.* at 13 ("[Plaintiff] does not challenge the State's policy of negotiating terms of employment and other matters with an organization that has won the majority support of employees—the State, after all, is free to discuss matters of policy with whomever it pleases.");

- *Id.* at 14 ("[Plaintiff] is *not* asking for the end of majority rule in the workplace and a court-imposed system of competing unions or multiple collective-bargaining agreements.");

- *Id.* at 14–15 (A preliminary injunction "would *not* prevent the state from applying a single set of terms to all its employees, or from engaging in collective bargaining with the Union, or from listening to the Union at collective-bargaining sessions. If would not compel the State to listen to [Plaintiff] and other non-members. Under *Knight*, the state has no obligation to give [Plaintiff] an equal say in policy, and nothing prevents the state from applying the terms and conditions of employment it arrives at with the Union to all its employees . . . .");

- *Id.* at 15 ("[T]he Board can recognize the Union as speaking for its own members, even while applying terms arrived at through negotiation with the Union to all public employees within a bargaining unit—just as it does today.");

- *Id.* at 18 ("Such an injunction would not affect wages or benefits under the Agreement, the Union's right to bargain over terms and conditions governing all bargaining-unit members (including [Plaintiff]), or the Board's right to negotiate with a single union.");

- Tr. Prelim. Inj. Hrg. 4–5, ECF No. 43 ("I'd like to begin by clarifying what it is that we're challenging and what it is that we're not. **We have no objection to Ohio law recognizing a labor union as an exclusive bargaining partner of a school board or school district.** That's fine. We're not claiming that a school board has

to negotiate with other labor unions or other organizations. We're not even claiming that [Plaintiff] has a right to be heard by the school board. Maybe it should do that but we recognize that the First Amendment doesn't require that. What we're challenging is the appointment of the union as her representative." (emphasis added));

- *Id.* at 8 ("But again, we're not challenging the exclusive aspect of the union's role here. What we're challenging is its representational role.");

- *Id.* at 16 ("[Plaintiff] is not claiming that she has any right to appear at collective bargaining sessions or that she has a right to participate at every single grievance proceeding. All she's saying is that she doesn't want the board to recognize the union as speaking for her.");

- *Id.* at 33–34 ("We are not seeking to open up any additional avenues for [Plaintiff] to have her say. . . . She has not claimed the right to be heard. She has not claimed the right to participate in collective bargaining or anything of that sort.");

- *Id.* at 34 ("In our view, the labor union, as well as the board, can largely continue as they've been going.");

- *Id.* at 36–37 ("**We're not seeking to disrupt the collective bargaining process**. . . . I haven't understood my friends who identified any particular thing that the union couldn't do other than claiming to speak for her that it is currently doing. In other words, there's this very broad argument on labor peace and disruption and chaos and so on, but the problem is, how do you connect the two? . . . Sure, if there were multiple unions that might be a problem. If maybe there wasn't a union at all, that perhaps could be a problem. Maybe the state has [a] legitimate interest with respect to those things. But in terms of the union not speaking for [Plaintiff], I haven't heard anything about how the union needs to speak for her." (emphasis added));

- *Id.* at 38 ("She doesn't want those words put in her mouth as opposed to any type of right of access or right for her to participate in some type of proceeding with the school board."); and

- *Id.* ("[T]he injury to the defendants in this instance would be negligible. Again, I haven't heard any of that connection as to how this affects their operations . . . .").

Regardless of how Plaintiff frames the arguments on summary judgment, her contention that the Union's exclusive status burdens her rights to free speech, free association, and to petition the government is directly at odds with her repeated assertions that her lawsuit does not challenge the Union's right to bargain exclusively with the State in setting the terms of employment for all bargaining-unit members. Plaintiff has repeatedly taken the position that she simply challenges the Union being deemed her "agent" or "representative," and therefore speaking "on her behalf," while it does so. As the Court found earlier, *see, e.g.*, Op. and Order 5, ECF No. 52, her other arguments are therefore waived.

Alternatively, even if Plaintiff had not waived her right to pursue those arguments, they are foreclosed by *Knight*. See *Knight*, 465 U.S. at 280–90; *see also id.* at 273–75 (despite Plaintiff's attempt to distinguish *Knight*, the Minnesota scheme at issue there also involved a statutory limitation requiring the Board to negotiate or confer only with the exclusive representative (if one was so selected)).[3]

---

[3] *Knight* and this Court's prior Opinion and Order also explain why Plaintiff's argument that the Union should be deemed to represent only bargaining unit members who are also Union members must fail. If that were the case, Plaintiff and other non-Union bargaining unit members would either be utterly unable to negotiate the terms of their employment (because they were unrepresented during negotiations), or they would have to have the corresponding right to participate in negotiations on their own behalf,

Plaintiff asserts that, to the extent *Knight* precludes her arguments, *Knight* should be overruled. However, she also acknowledges this Court's inability to overrule Supreme Court precedent. For that reason, Plaintiff seeks to preserve for appeal her contention that *Knight* should be overruled if it forecloses her arguments concerning the affirmative rights to speak, associate, and petition the government. Pl. Mot. Summ. J. 16, ECF No. 58-1. Although the Court finds Plaintiff has waived those arguments and finds them precluded by *Knight* only in the alternative, in the event the Sixth Circuit disagrees with this Court's finding on waiver, this Court acknowledges Plaintiff's preservation request.

B. The Court Gave Proper Deference to *Knight*.

The Court disagrees with Plaintiff's contention that the Court's preliminary conclusion reads "a single sentence unnecessary to the decision [in *Knight*] as having done so much work." Pl. Mot. Summ. J. 8, ECF No. 58-1 (quoting *Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23, 35 (2012)). Unlike in the cases Plaintiff cites, this Court did not take a "general expression[]" from *Knight*

---

which right was found lacking in *Knight*. Permitting the Union to "represent" all bargaining unit members (in the sense that negotiated-for terms and conditions apply even to non-Union members), while preserving bargaining unit members' ability to reject association with the Union (through non-membership), and protecting that right through the requirement of fair representation, passes constitutional scrutiny. Such a system of exclusive representation is narrowly tailored—Plaintiff's argument would entirely undo exclusive representation or require Plaintiff to give up her job as a requirement of her choice to go unrepresented. To the extent Plaintiff argues that a more narrowly tailored scheme would be a system wherein she remains bound by the terms and conditions bargained-for by the Union while her interests are wholly unrepresented in that bargaining process, the Supreme Court has suggested that such a scheme would raise "serious 'constitutional questions.'" *Janus v. Am. Fed. of State, Cty., and Municipal Emps., Council 31*, 138 S. Ct. 2448, 2469 (2018) (internal citation omitted).

and "transpose[] [it] to other facts." *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944). Rather, the scheme of exclusive representation at issue in *Knight* is materially indistinguishable from Ohio's scheme. Moreover, this Court concludes that the same reasoning applied by the Supreme Court in *Knight* to decide the claims that were advanced in that case—not merely a single sentence unnecessary to the decision—also compels rejection of the claims Plaintiff raises here. In fact, this Court found that, while the exact claims Plaintiff raises here were not raised in *Knight*, the claims raised in *Knight* and those raised by Plaintiff "are two sides of the same coin." Op. and Order 16, ECF No. 52. That conclusion makes *Knight's* reasoning equally applicable to Plaintiff's claims and keeps this Court's interpretation of *Knight* "within reasonable bounds." *Wantock*, 323 U.S. at 133.

C. Additional Case Law Supports the Court's Conclusion.

The Court previously cited multiple cases that rejected, as foreclosed by *Knight*, the same claims Plaintiff makes here. *See* Op. and Order 8–9, 12–13, 15, 19, ECF No. 52. The Court notes that, as of this time, none of those cases have been reversed.

In fact, the district court opinion in *Reisman v. Associated Faculties of the University of Maine*, 356 F. Supp. 3d 173 (D. Maine 2018), was subsequently affirmed by the United States Court of Appeals for the First Circuit. *Reisman*, 939 F.3d at 414 (finding *Janus* did not undermine prior circuit precedent holding that *Knight* foreclosed such compelled speech and compelled association

claims). Similarly, the district court opinion in *Mentele v. Inslee*, No. C15-5134-RBL, 2016 WL 3017713 (W.D. Wash. May 26, 2016), was affirmed by the United States Court of Appeals for the Ninth Circuit after the issuance of this Court's prior Opinion and Order. *Mentele v. Inslee*, 916 F.3d 783, 789 (9th Cir. 2019) ("[W]e apply *Knight's* more directly applicable precedent, rather than relying on the passage [Plaintiff] cites from *Janus*, and hold that Washington's authorization of an exclusive bargaining representative does not infringe [Plaintiff's] First Amendment rights."). These subsequently issued circuit opinions lend further support to this Court's conclusion.

Moreover, the Supreme Court has recently denied petitions for certiorari in *Bierman*, 139 S. Ct. 2043, and *Mentele*, 2019 WL 4921408, and those circuit decisions are therefore final.

Additionally, several other opinions have since been issued that support this Court's conclusion that *Knight* forecloses Plaintiff's claims. *See O'Callaghan v. Regents of Univ. of Cal.*, No. 2:19-cv-2289-JVS-DFM, Docket No. 69, at 9–10 (C.D. Cal. Sept. 30, 2019); *Sweet v. Cal. Ass'n. of Psychiatric Technicians*, No. 2:19-cv-349-JAM-AC, 2019 WL 4054105 (E.D. Cal. Aug. 28, 2019); *Grossman v. Haw. Gov. Emps. Ass'n/AFSCME Local 152*, 382 F. Supp. 3d 1088 (D. Haw. 2019); *Babb v. Cal. Teachers Ass'n*, 378 F. Supp. 3d 857 (C.D. Cal. 2019); *Crockett v. NEA-Alaska*, 367 F. Supp. 3d 996, 1009 (D. Alaska 2019) ("Despite the dicta set forth in *Janus* that enticed Plaintiff McCollum to bring such a First Amendment challenge, binding Supreme Court precedent flatly rejects her

position."); *Akers v. Md. State Edu. Ass'n*, 376 F. Supp. 3d 563, 573 (D. Md. 2019) ("Plaintiffs have agreed with Defendants that this claim is foreclosed by Supreme Court precedent . . . .").

At the time of this writing, it appears that every court to have considered the issue has found that *Knight* precludes claims that exclusive representation in the public sector, alone, amounts to unconstitutional compelled speech or compelled association.

### D. Ohio has a Compelling Interest in Preserving Labor Peace, and its Exclusive Representation Scheme is Narrowly Tailored to Achieve that Interest

In any event, even if Plaintiff's First Amendment claims are not precluded by Supreme Court precedent, they would fail.

Defendants have submitted ample evidence of Ohio's history of labor strife and how the system of exclusive representation has resulted in labor peace. Millstone Decl., ECF No. 28-1; Buettner Decl., ECF No. 28-2; Grodin Decl., ECF No. 28-3. Plaintiff has failed to rebut that evidence. Defendants' evidence shows that Ohio has a compelling interest in preserving labor peace and that exclusive representation is essential to facilitate that interest.

Ohio's system of exclusive representation is narrowly tailored to achieve that end such that it would survive even strict scrutiny. Although the scheme means that the terms of any bargained-for collective bargaining agreement apply to Plaintiff as a member of the bargaining unit, she remains free to *not* join the Union. O.R.C. § 4117.03(A)(1); Stipulated Facts ¶ 16, ECF No. 59. She remains

free to "[f]orm, join, assist, or participate in, or refrain from forming, joining, assisting, or participating in . . . *any* employee organization of [her] own choosing." O.R.C. § 4117.03(A)(1) (emphasis added). Moreover, the Union does not speak for Plaintiff; it speaks for the bargaining unit of which she is a member, *supra*, and she remains free to voice her disagreement with the Union. Hampton Decl. ¶¶ 5–8 (and exhibits), ECF No. 56-1; Stipulated Facts ¶ 20, ECF No. 59; Pl. Mot. Summ. J. 17, ECF No. 58-1 (conceding Plaintiff has "a near-absolute right to speak out [herself] on matters of public concern and to join alternative labor organizations, just like [she] may enter into any number of private associations free from government retaliation." (citing *Heffernan v. City of Paterson, N.J.*, 136 S. Ct. 112, 1416 (2016)); *see also* O.R.C. § 4117.03(A)(5). And the Union must fairly represent even the interests of those bargaining unit members who are not also Union members, such as Plaintiff. O.R.C. § 4117.11(B)(6).

All of these aspects of Ohio's exclusive representation scheme demonstrate that it is narrowly tailored to achieve the compelling State interest while protecting bargaining unit members' constitutional rights from undue infringement. Opening the system up to multiple unions (or permitting non-Union members to negotiate on their own behalf) would impair the State's compelling interest, *see* Millstone Decl. ¶¶ 12, 15–16, ECF No. 28-1; Buettner Decl. ¶¶ 13–14, ECF No. 28-2; Grodin Decl. ¶¶ 4–5, 11–13, 15, ECF No. 28-3, and leaving non-Union members' interests entirely unrepresented during bargaining would

raise its own constitutional concerns. Ohio's system is sufficiently tailored, and Plaintiff's discontent with the legislature's word choice in using "exclusive representative" instead of a phrase such as "exclusive bargaining partner" does not render the scheme unconstitutional as violative of her First Amendment speech and association rights.

Indeed, to the extent *Knight* does not foreclose Plaintiff's claims, *Janus* strongly suggests that exclusive representation, alone, is narrowly tailored to achieve the compelling State interest of labor peace. *See Janus*, 138 S. Ct. at 2465–66 (assuming labor peace is a compelling state interest and finding that, because exclusive representation and agency fees are not inextricably linked, the *agency fees* are not sufficiently tailored to achieve that state interest but suggesting that exclusive representation, itself, is sufficiently tailored); *see also id.* at 2478 ("It is also not disputed that the State may require that a union serve as exclusive bargaining agent for its employees—itself a significant impingement on associational freedoms that would not be tolerated in other contexts. We simply draw the line at allowing the government to go further still and require all employees to support the union irrespective of whether they share its views."); *id.* at 2466 (discussing federal law, the Postal Service, and state law permitting the appointment of exclusive representatives without any hint of disapproval of the same); *id.* at 2469 (implying that the duty of fair representation ameliorates any infringement on First Amendment rights caused by appointment of exclusive representative); *id.* at 2485 n. 27 ("States can keep their labor-relations systems

exactly as they are—only they cannot force nonmembers to subsidize public-sector unions. In this way, these States can follow the model of the federal government and 28 other States.").

Thus, this Court agrees with the Ninth Circuit that "*Janus* did not revisit the longstanding conclusion that labor peace is 'a compelling state interest,' and the Court has long recognized that exclusive representation is necessary to facilitate labor peace; without it, employers might face 'inter-union rivalries' fostering 'dissention within the work force,' 'conflicting demands from different unions,' and confusion from multiple agreements or employment conditions." *Mentele*, 916 F.3d at 790 (quoting *Janus*, 138 S. Ct. at 2465). Plaintiff's claims would thus fail even if they were not precluded by binding Supreme Court precedent.

## IV. CONCLUSION

In conclusion, the Court's prior Opinion and Order fully explains why Supreme Court precedent precludes Plaintiff's claims. The fact that exclusive representation "would not be tolerated in other contexts," *Janus*, 138 S. Ct. at 2478, is irrelevant because the Supreme Court has stated that it is tolerated in *this* context. In fact, although Plaintiff repeats that phrase as her mantra throughout her briefing, the full statement by the Supreme Court is, *"It is also not disputed that the State may require that a union serve as exclusive bargaining agent for its employees*—itself a significant impingement on associational freedoms that would not be tolerated in other contexts." *Id.* (emphasis added). Whatever impingement on Plaintiff's First Amendment rights is caused by the

exclusive representation scheme, the Supreme Court has found that the impingement passes constitutional muster. Unless and until the Supreme Court overrules binding precedent, her claims are precluded by law. Therefore, Plaintiff's motion for summary judgment, ECF No. 58, is **DENIED**, and Defendants' motions for summary judgment, ECF Nos. 56 & 57, are **GRANTED**. The Clerk shall enter final judgment for Defendants and terminate the case.

    **IT IS SO ORDERED.**

_/s/ Michael H. Watson_
**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**